## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Catrice Lynch,<br><br>     Plaintiff,<br><br> v.<br><br>City of Minneapolis, Peter Carlson, Christopher Steward, and Andrew Braun,<br><br>     Defendants. | Court File No. 14-cv-4673 PJS/JSM<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

## THE PARTIES

1. Plaintiff is an adult female who currently resides and has resided in Minneapolis, Minnesota at all times relevant to this action.

2. Defendants Carlson, Steward, and Braun are adult males who at all times relevant to the allegations set forth in this Complaint were acting under the color of state law in their capacities as law enforcement officers employed by the City of Minneapolis, Minnesota. Plaintiff is suing them in their individual capacities.

3. Defendant City of Minneapolis is a political subdivision of the State of Minnesota. Minneapolis employed Carlson, Steward, and Braun as police officers at all times relevant to this action. Minneapolis is sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02 for the unlawful conduct of Officers Carlson, Steward, and Braun. Minneapolis is the political subdivision

charged with training and supervising law enforcement officers.  Minneapolis has established and implemented, or delegated the responsibility for establishing and implementing policies, practices, procedures, and customs used by law enforcement officers employed by Minneapolis regarding seizures and the use of force. Minneapolis is therefore also being sued directly pursuant to *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978).

## JURISDICTION AND VENUE

4. This is an action for monetary relief under 42 U.S.C. §§ 1983 and 1988 and federal and state common law.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(a)(3), 1331, and 1367.  Venue is proper in this district under 28 U.S.C. § 1391, as the acts and omissions giving rise to this action occurred in this district, and, on information and belief, all Defendants reside in this district.

## GENERAL ALLEGATIONS

5. On September 26, 2014 at or around 6 PM, Minneapolis police officers arrived in front of Plaintiff's house in Minneapolis.

6. These officers included Defendants Carlson, Steward, and Braun.

7. The officers were there to investigate an allegation of domestic abuse.

8. When the officers arrived, they spoke outside the house with the alleged victim, S.S.

9. S.S. told the officers that the suspect was her father, R.S.

10. S.S. told the officers that R.S. was inside Plaintiff's house.

11. The officers, including Defendants Carlson and Steward, spoke with Plaintiff Lynch outside her house.

12. Plaintiff told the officers that R.S. lives at her house with her.

13. Plaintiff then walked inside her house.

14. Defendants Carlson, Steward, and Braun walked to the front door of Plaintiff's house.

15. Defendant Steward knocked on the front door but received no answer.

16. Defendant Steward knocked on the front door a second time.

17. R.S. came to the front door, but did not open it.

18. R.S. yelled through the door or window and requested the officers to leave.

19. Officer Steward requested R.S. numerous times for R.S. to open the door.

20. R.S. continued to request the officers to leave.

21. R.S. told the officers at least twice that he was not going to open the door.

22. Defendant Braun then walked over to the door and yelled into it to R.S.

23. Defendant Braun told R.S. to open the door.

24. R.S. told Defendant Braun that he was not going to open the door.

25. R.S. again requested the Defendants to leave.

26. Defendants Carlson, Steward, and Braun stood outside the door to Plaintiff's house for several minutes in total trying to get R.S. to come to the door.

27. After several minutes had passed, R.S. opened the door.

28. R.S. requested Defendants Carlson, Steward, and Braun to read him his rights.

29. Defendant Steward then reached inside Plaintiff's house and grabbed R.S.'s arm.

30. R.S. pulled his arm away.

31. Defendant Braun then reached inside Plaintiff's house and grabbed R.S.'s arm.

32. Defendants Braun, Steward, and Carlson then fully entered Plaintiff's house.

33. Neither Plaintiff nor any other occupants of her house consented to the officers entering her house.

34. When the officers entered Plaintiff's house, they started beating up R.S..

35. Plaintiff pulled out her mobile phone and told the officers that she was going to record them beating up R.S.

36. In response to Plaintiff's comment regarding recording the officers beating up R.S., Defendant Steward grabbed her and rammed her headfirst into her front door, then kicked her while she was down on the ground.

37. Defendant Steward continued to beat Plaintiff up.

38. Defendant Steward punched and kicked Plaintiff repeatedly.

39. Defendant Steward put Plaintiff in handcuffs.

40. Defendant Steward kicked Plaintiff when she was prone on the ground and in handcuffs.

41. Defendant Steward put Plaintiff in a police squad car and left her there for up to 20 minutes.

42. The officers released Plaintiff.

43. Plaintiff did not do anything during this incident that would cause a person to use force against her.

44. Plaintiff did not interfere with the officers at any time relevant to this action.

45. Plaintiff did not resist arrest at any time relevant to this action.

46. Plaintiff was cooperative with the officers at all times relevant to this action.

47. Defendants' conduct caused Plaintiff to suffer injuries.

48. Plaintiff sought treatment for her physical injuries at the emergency room later that evening.

49. Plaintiff's health care providers diagnosed her as suffering from a ligament sprain of her wrist and a traumatic hematoma of her wrist.

50. Minneapolis, through its counsel of record, consented in writing to allow Plaintiff to file this amended Complaint.

## COUNT I
### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – FALSE ARREST, UNLAWFUL SEIZURE, UNLAWFUL SEARCH, UNLAWFUL ENTRY, FAILURE TO LEAVE

51. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

52. Defendants proximately caused Plaintiff's arrest.

53. Defendants proximately caused Plaintiff's detention.

54. Defendants lacked a warrant authorizing them to arrest Plaintiff, detain Plaintiff, or enter Plaintiff's home.

55. Defendants lacked probable cause or reasonable suspicion to arrest and detain Plaintiff.

56. Defendants lacked a reasonable belief of probable cause or reasonable suspicion to arrest and detain Plaintiff.

57. Defendants were not otherwise authorized to arrest Plaintiff, detain Plaintiff, or enter Plaintiff's home.

58. No exigent circumstances existed that authorized Defendants to continue to wait outside Plaintiff's home after R.S. requested them to leave.

59. No exigent circumstances existed that authorized Defendants to enter Plaintiff's home.

60. Defendants were acting under color of state law at all times discussed above.

61. Defendants' actions and omissions caused Plaintiff to suffer a violation of her Fourth Amendment rights.

62. At the time of Plaintiff's arrest, it was clearly established that it is unconstitutional to authorize or execute an arrest or detention absent probable cause or reasonable suspicion.

63. At the time of Plaintiff's arrest, it was clearly established that it is unconstitutional to authorize or execute a seizure inside a person's home.[1]

64. At the time of the events giving rise to this action, it was clearly established under the Constitution that when R.S. requested the officers to leave the area outside of Plaintiff's front door, they had a duty to leave.[2]

65. At the time of the events giving rise to this action, it was clearly established under the Constitution that the officers had no right to enter Plaintiff's home when they did.[3]

---

[1] *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) ("when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'") (citation omitted); *Payton v. New York*, 445 U.S. 573, 586 (1980) ("It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.") (internal quotation marks omitted); *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) ("It is clearly established that the Fourth Amendment prohibits a warrantless entry into a suspect's home to make a routine felony arrest absent consent or exigent circumstances.") (citation omitted).

[2] *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) ("This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters.").

[3] *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("We held that because 'the Fourth Amendment has drawn a firm line at the entrance to the house … [, a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'"); *U.S. v. Duchi*, 906 F.2d 1278, 1282 ("a warrantless entry into the home is per se unreasonable").

66. Plaintiff suffered harm and damages as a result of Defendants' denial of her constitutional rights.

## COUNT II
## DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – EXCESSIVE FORCE

67. Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

68. Defendant Steward used force against Plaintiff while effectuating a seizure of her.

69. The amount of force that Steward used while seizing Plaintiff was unreasonable under the circumstances.

70. Steward was acting under color of state law when he used unreasonable force while seizing Plaintiff.

71. Steward's actions and omissions caused Plaintiff to suffer a violation of her Fourth Amendment rights.

72. At the time of the events giving rise to this action, it was clearly established that it is unconstitutional to use unreasonable force, as Steward used against Plaintiff, to effectuate a seizure.

73. The other officers witnessed that Steward use excessive force against Plaintiff.

74. The other officers had an affirmative duty to intervene on behalf of Plaintiff, whose Fourth Amendment rights were being violated in their presence by another law enforcement officer.[4]

75. The other officers failed to intervene on Plaintiff's behalf.

76. Plaintiff suffered harm as a result of Defendants' denial of her constitutional rights.

## COUNT III
### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FIRST AND FOURTEENTH AMENDMENTS

77. Plaintiff restates the allegations contained in the previous paragraphs as if fully incorporated herein.

78. Observing and recording public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is therefore expressive conduct protected by the First Amendment to the United States Constitution.

79. Defendants' arrest of Plaintiff in absence of probable cause that she had committed a crime constituted unlawful retaliation by public officials for Plaintiff engaging in activity protected by the First Amendment to the U.S. Constitution.

80. Defendants' use of force against Plaintiff constituted unlawful retaliation by public officials for Plaintiff engaging in activity protected by the First Amendment to the U.S. Constitution.

---

[4] *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir. 1983); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981).

9

81. Defendant City of Minneapolis is responsible for the violation of Plaintiff's constitutional rights because the individual Defendants' actions resulted from the City's custom, pattern, practice, or policy of allowing officers to arrest individuals for their expressive conduct in videotaping or otherwise recording police undertaking their official duties.

82. Plaintiff suffered harm as a result of Defendants' denial of his constitutional rights.

## COUNT IV
## INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff restates the preceding paragraphs as though fully stated herein.

84. By Defendants' aforementioned wrongful conduct and/or failure to act, Defendants engaged in a pattern of unlawful conduct that caused Plaintiff to suffer severe emotional distress and trauma that no reasonable person could be expected to endure.

85. The course of Defendants' conduct was so extreme and outrageous that it goes beyond all possible bounds of decency and is utterly intolerable in a civilized society.

86. Defendants, by their extreme and outrageous conduct complained of herein, intentionally and/or recklessly caused severe emotional distress to Plaintiff.

87. Plaintiff has suffered injuries as a result of the severe emotional distress caused by Defendants, in an amount to be proven at trial.

## COUNT V
## BATTERY

88. Plaintiff restates the preceding paragraphs as though fully stated herein.

89. Defendants harmfully touched Plaintiff.

90. Defendants' actions were objectively unreasonable and actually and proximately caused Plaintiff to suffer harm.

## JURY DEMAND

91. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on her claims against Defendants, the exact amount to be proven at trial;

2. Declare that Defendants' conduct, as set forth above, violated 42 U.S.C. § 1983;

3. Award Plaintiff damages to compensate her for the injuries she suffered as a result of Defendants' unlawful conduct;

4. Award Plaintiff punitive damages with respect to her claims under federal law, the exact amount to be proven at trial;

5. Grant Plaintiff leave to amend the Complaint to include a claim for punitive damages, the exact amount to be proven at trial;

6. Award Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees, pursuant to 42 U.S.C. § 1988;

7. Grant Plaintiff all statutory relief to which she is entitled;

8.  Grant Plaintiff leave to amend this Complaint to supplement any factual deficiencies or otherwise address any pleading deficiencies herein; and

9.  Grant any other relief the Court deems just and equitable.

Dated:  May 4, 2015

    *s/Joshua R. Williams*
Tim M. Phillips (#390907)
tphillips@jrwilliamslaw.com
Joshua R. Williams (#389118)
jwilliams@jrwilliamslaw.com
3249 Hennepin Avenue S, Suite 216
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Facsimile

**ATTORNEYS FOR PLAINTIFF**